## JAMES H. EDWARDS *v.* GOLDING & PEABODY.

In an action to recover the price of property sold, where a bill of sale was executed, it is competent for the plaintiff to prove, by parol, that he was the owner of the property sold, and that the person who made the sale acted merely as his agent, notwithstanding the bill of sale may show, upon its face, a sale of the property by the agent, in his own name, to the defendants.

Edwards *v*. Golding et al.

And the fact of the agency, in such case, being established, the plaintiff may sustain the action, in his own name, for the price of the property, notwithstanding the bill of sale, which was executed in pursuance of a previous parol contract of sale between the agent and the defendant, was in fact executed by the plaintiff in the name of the agent, without disclosing the agency to the defendant, and notwithstanding the agent, by a previous arrangement between himself and the plaintiff, was to have all for which he sold the property above a certain price.

In this case the property, which was scrap iron, was sold by an agent of the plaintiff to the defendant by parol, and was to be subsequently weighed and delivered. The defendant called for the iron in the absence of the agent, and a question arose, whether the sale was to be at gross weight, or net weight,—the defendant claiming that it was expressly agreed, that it should be at gross weight. The plaintiff finally consented, that the amount of the iron might be computed at gross weight, the defendant agreeing, that, if it was not right so to compute it, he would make it right, when they could see the agent. The iron was accordingly so computed, and the bill of sale executed according to that computation. And it was held, that the plaintiff might prove by parol, in an action to recover for the price of the iron, that, by the original contract, the iron was to be computed at net weight, although the bill of sale showed the computation to be at gross weight, and the agreement to correct it rested wholly in parol.

It was also held, that the agent was a competent witness for the plaintiff, the plaintiff and agent having executed mutual releases, although it appeared, that the agent was to have all he could get for the iron above a certain price, and that the plaintiff had received from the defendant, towards the price of the iron, more than he was to receive as between him and the agent, and that the plaintiff had no interest in the avails of the suit, and that the suit was commenced and prosecuted by the agent for his own benefit and at his own expense,—it not appearing, affirmatively, that there was any thing due from the agent to his attorneys in the case, which would give them a lien upon the judgment.

BOOK ACCOUNT. Judgment to account was rendered in the county court, and an auditor was appointed, who reported the facts substantially as follows.

The plaintiff presented an account against the defendants for 35,042 lbs. of scrap iron, at eighty seven and a half cents per hundred pounds, and gave credit for a note for $272,00,—claiming a balance, with the interest, of $38,15. The defendants then gave in evidence a bill of sale in the following words,—

"Messrs. Golding &  Peabody bought of  J.  W.  Mills, 15 tons, 2
' cwt., 2 qrs., 16 lbs. old iron, 87 1-2 cts. cwt.     $264,83
' 1146 lbs. old burned iron, 5-8 c.                    7,16 ... $271,99
' Rec'd note at 4 mo's, payable at the  Essex County Bank.
' Burlington, 6th June." (Signed)  J. W. Mills, *per*  J. H. Edwards.

The defendants  also gave in  evidence the note  described  in the
bill of sale, and  proved  that the  bill  of  sale was for the same  iron
charged in the plaintiff's account, and that it was  weighed and de-
livered by the plaintiff  himself, and that the bill  of  sale was at  the
same time  executed  and delivered by the plaintiff  to the defendant
Peabody, and that the note  was at the  same time  executed  and  de-
livered to the plaintiff therefor, and  that the note  was  duly paid  at
maturity.

The  plaintiff  then offered to  prove to  prove by parol, that he  owned the
iron  in  question, and that, a  short time  before the date of the  bill  of
sale, he  agreed with  J.  W.  Mills, in  whose name the bill  of sale  was
executed, that  Mills  might  sell the iron and  have all he  could get
therefor  over  seventy five cents  *per*  hundred ;  that  Mills  sold  the
iron to the defendant, by parol  contract  made at  Burlington a  few
days before the date and  execution  of the  bill  of  sale, but did  not
weigh  or  deliver it ;  that  the terms  of the  contract were,  that  a
small  portion of  the iron, amounting, as  afterwards  ascertained, to
1146 lbs. was to be  five eighths of  a  cent *per* pound and  the  resi-
due  eighty-seven  and  a half cents *per* hundred, and  that  the whole
should be  estimated at  *net*  weight, it being a sale  of  the entire  bulk,
to  be  afterwards  weighed ;  that  Mills  informed  the  plaintiff  and
one  Whiteman  of  the  contract, except  that he  did  not  inform
them  whether it was to be  a sale at  gross  weight or  net  weight, and
· requested  them to weigh and deliver it to the *defendants*, as it would
probably  be called for while he  was  absent ;  that, in  the  absence  of
Mills,  the  defendant  Peabody, who  negotiated  the  contract  with
Mills,  called for  the  iron, and the plaintiff  and  Whiteman  weighed
and delivered it, at  Burlington,  where it lay  at  the time the contract
was  made  with  Mills ;  that in  doing this a  dispute  arose  between
Peabody and the  plaintiff  and  Whiteman, whether  the  iron  should
be  computed at  gross  weight, or  net  weight ;  that  Peabody  repre-
sented to them, that  there was a  special  contract with  Mills, that it
should be gross weight, except the 1146 lbs., and the plaintiff claimed

that it should be net weight; that the parties finally agreed to close the matter as it is estimated in the bill of sale,—the 1146 lbs. at net weight and the residue at gross weight, as Peabody claimed the contract was with Mills; and that the bill of sale and note were executed, upon Peabody's parol agreement, then made, that, if it was not right, he would make it right when they could see Mills. To this evidence the defendants objected; but it was admitted by the auditor; and the auditor found the facts to be as offered to be proved, except as to the agreement as to net weight.

The plaintiff then offered Mills as a witness; who was objected to by the defendants. It appeared, that the plaintiff had received the avails of the note given by the defendants, which amounted to more than he was to receive, as between him and Mills, and that he had no interest in the avails of this suit, and that the suit was instituted and prosecuted by Mills, for his own benefit and at his own expense, but by the consent of the plaintiff; and thereupon the auditor excluded the witness. Mills thereupon executed to the plaintiff a release of all claim upon him for any portion of the proceeds of the sale of the iron, or for any compensation for effecting the sale, and of all his interest in this suit, both in damages and costs; and the plaintiff at the same time executed to Mills a release of all claim for the costs, charges and expenses of this suit. Mills was then again offered as a witness, and objected to by the defendants, and admitted by the auditor.

The auditor reported, that, from all the testimony in the case, including that of Mills, he did not find any special contract proved, between Mills and the defendants, whether the iron should be estimated at *net* or *gross* weight; but that, if the testimony of Mills should have been excluded, he found the contract to have been in accordance with the bill of sale. The auditor also reported, that Peabody represented the contract to the plaintiff and Whiteman, as he understood it to have been made with Mills; that the plaintiff, in adjusting the matter with Peabody at the time the iron was weighed and delivered, called the iron the property of Mills; and that neither of the defendants knew that the iron belonged to the plaintiff, until some time after the execution of the bill of sale.

The auditor reported, that if the parol evidence offered by the plaintiff and the testimony of Mills were admissible, then, finding

no express contract as to the weight proved, he allowed the iron at net weight, and found a balance due to the plaintiff of $34,44; but that, if the parol evidence was not admissible, or if the testimony of Mills was not admissible, he found nothing due from the defendants to the plaintiff.

The county court, March Term, 1846,—BENNETT, J., presiding,—rendered judgment in favor of the plaintiff upon the report. Exceptions by defendants.

*Lyman & Chittenden* for defendants.

1. The bill of sale and receipt offered in this case contain the whole substance of the contract between the parties, and come fully within the rule excluding parol evidence to vary their contents. Stark. Ev., Part IV, 1006. *Lane* v. *Neale,* 2 Stark. R. 105, [3 E. C. L. 267.] *Raymond* v. *Roberts,* 2 Aik. 204. *Ripley* v. *Paige,* 12 Vt. 353. *Reed* v. *Wood,* 9 Vt. 285. But it is contended, that this writing was not made the depository of the contract by the parties, and that parol evidence is admissible, to show that it was not The authorities relied on by the plaintiff do not sustain this proposition. *Roberts* v. *Jackson,* 1 Wend. 478, has reference to the delivery, not to the substance, of the contract. It decides, that the delivery of a deed as an escrow may be shown by parol. The cases cited in Stark. Ev., Part IV, 1020, go only to the extent, that parol evidence is admissible to show that from *mistake,* or *negligence,* the writing was not made the depository of the intentions of the parties. In this case there was no mistake, and no negligence. The only ground, upon which the evidence can be admitted, is that of fraud. *Raymond* v. *Roberts,* 2 Aik. 204. Stark. Ev., Part IV, 1015. 1 Phil. Ev. 552. But the report expressly finds, that Peabody, in all his representations at the time of taking the iron, stated the contract as he understood it to have been made with Mills.

2. The facts show, that Mills should have been the plaintiff of record. The report finds,—1, That Mills sold the iron, calling it his own;—2, That it was purchased by the defendants without knowledge that Edwards was interested in it;—3, That Edwards executed the bill of sale in the name of Mills;—4, That Mills was to allow Edwards seventy-five cents per hundred pounds, which was a full

Edwards *v.* Golding et al.

payment for the iron. We contend, that this constitutes a sale of the iron to Mills.

3. The case presents the question, whether the real plaintiff, in an action instituted by him for his sole benefit, can, on trial, purge himself of his interest and render himself a competent witness by an assignment, executed by him to the plaintiff of record. We insist, that this question has already been settled by this court. *Jarvis v. Barker's Adm'r,* 3 Vt. 445. It is said, that this case is subject to the objection, that the release was to a third person, and not to the plaintiff of record. But whether the release was to one, or the other, the evil guarded against by the court in that case is the same. But we are not compelled to rely on this case alone. Gresley's Eq. Ev. 274. *Bell* v. *Smith,* 11 E. C. L. 198. In the latter case the assignment was to the plaintiff of record.

But the report shows the suit to have been commenced and prosecuted at the expense of Mills. He was therefore bound to pay the costs, that had previously accrued on the part of the plaintiff, if the action is determined for the defendants. Nothing appears in this case discharging him from this liability. A bond of indemnity from the plaintiff would not have been sufficient,—nothing short of a discharge from the attorneys themselves. *Bell* v. *Smith,* 5 B. & C. 188, [11 E. C. L. 198.] *Hutchinson* v. *Pettes,* 18 Vt. 614.

*Smalley & Phelps* for plaintiff.

1. The evidence was properly admitted, to show that the iron was, by the actual contract between the parties, to be estimated at *net* weight, and was erroneously charged in the bill of sale at *gross* weight. The report expressly finds, that the bill of sale was executed by the plaintiff upon the faith of the false representations of the defendant Peabody in regard to the contract between him and Mills; and this is sufficient to avoid any instrument in writing. 3 Stark. Ev. 1015—1020. *Roberts* v. *Jackson,* 1 Wend. 478. *Creery* v. *Holly,* 14 Wend. 26. *Barney* v. *Bliss et al.,* 2 Aik. 60. *Raymond* v. *Roberts,* 2 Aik. 204. Nor would it affect the case, that the defendant *understood* the contract to be as he represented it. As the bill of sale was drawn contrary to the wish of the plaintiff, and solely upon the defendant's statement of the contract, he was bound to know, whether the statements were true, or not, and cannot after-

wards claim, that, though they were false, and the contract was made on the faith of them, still the plaintiff is concluded by the contract, because the misrepresentation was not intentional. *Fuller* v. *Wilson*, 43 E. C. L. 629. *Evans* v. *Collins*, 43 E. C. L. 639 n. Fraud may as well be negligent, as intentional, if the consequences are the same to the party affected.

The defendant's assurance, that, if not right, he would make it right would authorize the admission of the testimony.

2. Had the plaintiff such a property in the iron, as enabled him to maintain this action? The report states, that the iron was absolutely the property of the plaintiff and was sold by Mills for him and as his agent. Of course no one but the plaintiff could bring the suit, even had it appeared, (which does not appear,) that the plaintiff and Mills had divided their interest, and that the balance due from the defendants became the property of Mills. 3 E. C. L. 423. 4 Taunt. 575, and notes. 7 Taunt. 353, and notes. 28 E. C. L. 434. Nor is it material, that the bill of sale is in the name of Mills. It states that the iron was "bought of J. W. Mills." This was true, though Mills was agent of the plaintiff. It is merely descriptive of the sale. *Jackson* v. *Mills*, 13 Johns. 463. *Wilson* v. *Hart*, 7 Taunt. 295, [2 E. C. L. 112.] *Kemble* v. *Atkins*, 7 Taunt. 266, [2 E. C. L. 96.]

3. Mills was properly admitted as a witness. It is objected, that he was the actual plaintiff in interest, and, as such, could not release his interest. But the facts show, that he was not the sole party in interest; he was to have all the proceeds of the iron over seventy-five cents per hundred; the sale was for eighty seven and a half cents; of course, the plaintiff was more in interest than the witness to have the iron estimated at net weight, and the share of each would depend upon the result of this suit. If, then, Mills were but partially interested in the event of the suit, it will not be denied, that he could be made a witness by the execution of mutual sufficient releases.

But even if the witness were solely in interest, there can be no objection, either upon principle, or authority, to his releasing *to the plaintiff in the suit.* The foundation of the objection to the testimony even of a party of record is interest; and if it were possible to discharge entirely all interest of a party, he would be a com-

petent witness. Stephens' N. P. 737. Phil. Ev. 69. *Weller* v. *Foundling Hospital*, Peake 153. *Flint* v. *Allyn*, 12 Vt. 615. *Scott* v. *Hooper*, 14 Vt. 535. These authorities show, that there is no arbitrary rule, which, independent of the question of interest, prevents either a nominal or actual plaintiff from being a witness. The case of *Jarvis* v. *Barker*, 3 Vt. 445, which is mainly relied upon by the defendants, is entirely distinguishable from the present.

The opinion of the court was delivered by

BENNETT, J. Several questions have been raised in argument. It is claimed by the defendants' counsel, that the action should have been brought in the name of Mills; that is, that the action cannot be maintained in the name of Edwards. It may be remarked, that the inquiry is not, whether the action might have been maintained in the name of Mills, but whether the present plaintiff can have a right of action. It is said in argument, that, as the bill of sale states that the defendants bought the iron of Mills, it is conclusive upon the plaintiff; and that it cannot be shown by parol, that he was acting in the character of agent.

It is not to be questioned, that parol contemporaneous evidence is inadmissible to contradict, or vary, the terms of a valid written contract. In this case, however, the sale of the iron was, as the auditor finds, by a parol contract, made between Mills and the defendants some time prior to the delivery of the iron, when the bill of sale was executed by Edwards in behalf of Mills and the note taken; and it may well be questioned, whether the rule excluding parol evidence should extend to a case, where the original contract was verbal and entire, and subsequently a part of it, only, is reduced to writing. But, be this as it may, we do not think that it impugns any rule of law, to allow it to be shown, by parol, that Mills, in the sale, was but the agent of the plaintiff. It is consistent with the bill of sale, that the defendants bought the iron of Mills, either as *agent*, or *principal*. It does not profess to state in which capacity he was acting; and, without any violence to language, an agent might adopt the phraseology in this bill of sale.

In *Dodge* v. *Billings*, 2 D. Ch. 26, where the defendant had given a written contract to account for a certain Government bill of exchange, received of the plaintiff, *on notes he held against him,* it

was held competent for the defendant to show by parol, that he was to account for the Government bill on notes then in his hands against the plaintiff in favor of a third person, and which he held as agent. In *Shemble et al.* v. *Atkins et al.*, 7 Taunt. 260, a sale note was given to the plaintiffs, who were brokers in London, describing the sugars *as sold to them;* and a recovery was had in that case for the *sale price,* upon the ground, that the defendants had authorized the plaintiffs to make the contract of purchase in their own names, (brokers in the city of London being restrained from buying on their own account.) If the *sale note* had been deemed conclusive, no recovery could have been had. So in *Wilson* v. *Start,* 7 Taunt. 295, it is held, that the statute of frauds does not exclude parol evidence, that, in a written contract for the sale of goods, one of the parties was acting as agent for a third person, though the writing might purport, that he was acting for himself. PARK, J., says, " It is the constant practice to show, by parol, whether a contracting party is *agent,* or *principal.*

It being, then, established, that the iron sold was the property of the plaintiff and that Mills was acting as his agent, the plaintiff may have the action, though Mills did not at the time disclose his agency, and the defendants supposed the property belonged to Mills. *Paterson et al.* v. *Gandasequi,* 15 East 62. Story on Agency 509, sec. 401. *Lapham* v. *Green,* 9 Vt. 407. The fact that Edwards executed the bill of sale in the name of Mills cannot *estop* him from having the action in his own name, or in any way alter the legal effect of the transaction ; neither does the fact, that Mills was to have, as a commission for the sale, all above seventy five cents on a hundred pounds.

In regard to the admission of parol evidence, to show, that, by the terms of the original contract, the weight of the iron was not to be gross weight, we have no doubt. The bill of sale does not state, in terms, whether the iron was sold by gross, or net, weight ; and it is only by computation on the amount specified in the first item in the bill, that we can learn, that the sale was by the gross weight ; and it seems, that, at the time Edwards executed the bill of sale and made the computation, it was done upon the representation, by Peabody, that, by the terms of the contract between him and Mills, the iron (except as to a small portion of it) was to be reckoned

at gross weight, and upon Peabody's agreement, that, if it was not right to so compute it, *it should be made right.* To hold that Edwards is bound by the computation so made would be great injustice. Most clearly he should be allowed to show, whether "it was right," or, in other words, according to the original contract, as made by Mills. This was the very ground, upon which Edwards consented, for the time being, to reckon the iron at gross weight.

The only remaining question relates to the admissibility of Mills as a witness, after he had executed the release to Edwards. It is claimed, that, in no event, can Mills be made a witness; and we have been referred to the case of *Jarvis* v. *Barker's Adm'r*, 3 Vt. 445. The exclusion of Spencer, as a witness in that case, seems to have been put upon the ground, that his interest had not been removed. Though it is true, the judge, in a closing remark in his opinion upon this part of the case, says, "it savors too strongly of a case of a real plaintiff to a suit in another's name selling out his interest, for the purpose of becoming a witness to a point not otherwise capable of proof."

But suppose that the *real plaintiff* to a suit in the name of a third person cannot be made a witness, by selling out his interest on trial, the case at bar is distinguishable from the case of *Jarvis* v. *Barker*. It appeared in that case, that the note declared upon had been taken by Spencer for his own benefit, payable to the plaintiff of record, or his order, without his agency, and that the validity of the note itself depended upon the performance of certain conditions precedent by Spencer. In the case before us the consideration for the promise moved from Edwards, and the promise was, in contemplation of law, made to him and for his benefit. He was the man mainly in interest in the promise; whereas in the case of *Jarvis* v. *Barker*, Spencer was the only one in interest in the promise, when made. All the interest, that Mills ever had in this promise, was to the extent of his commission. Though Edwards had in fact received what belonged to him from the avails of the iron, yet this does not alter the case. Mills was but the agent of the plaintiff in the sale of the property, and the right of action accrued to the plaintiff; and this right of action the principal had the right to control, even against the will of the agent. Though the agent had an interest in the suit, yet he cannot be regarded as the *real party.* We see no

reason, why Mills is not a witness upon his release of his interest. He has released to the plaintiff all his interest in the subject matter of the suit, and also in the costs.

It is now, however, said in argument, that the counsel employed by Mills would have a *lien* on the judgment, which Edwards might recover, for their costs, and in this way Mills would still have a beneficial interest in the suit. If the attorneys of Mills would have a *lien* on the judgment, which Edwards might recover, Mills would not, as his release is but a quit claim of such interest as he had in the suit, be liable to respond to Edwards the amount of the *lien* enforced by the counsel of Mills; and upon the authority of *Hutchinson, Adm'r*, v. *Pettes*, 18 Vt. 614, he would still have an interest in the suit.

But no such question appears to have been raised before the auditor; and it does not arise on this bill of exceptions. Though the suit, to the time of the audit, had been prosecuted at the expense of Mills, (he employing the counsel,) yet it is not found, that any thing was then due to them for fees, or advances, in the prosecution of the suit. We cannot assume an existing indebtedness, in order to exclude the witness. The interest of the witness must be made to appear affirmatively. The attorneys, for aught that appears, were paid by Mills, either in advance, or at the time of the rendition of the services. There is not enough shown, to establish a *lien* in favor of the attorneys; and without this, the release of Mills removed his interest.

Though the auditor does not find any special agreement as to the weight, yet in such case the statute provides, that the rule shall be net weight.

The judgment of the county court is <em>affirmed.</em>